UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
--------------------------------------------------------------X

UNITED STATES OF AMERICA       :
       :
    -v-       :
       :      23 Cr. 188 (JCC)
**RICHARD REID,**       :
       :
      Defendant     :

--------------------------------------------------------------X

## **SENTENCING MEMORANDUM:**
*Sentencing Submission for the Defendant, Richard Reid*

The Ritchie Law Firm PLLC
Stephen Ritchie
*Attorney for the Defendant*
2722 Colby Ave, Suite 603
Everett, Washington 98201
(425) 645-5755

cc:    Michael Dion, *Assistant United States Attorney*
       Ryan Adamson, *United States Probation Officer*



July 23, 2024

<u>**VIA ELECTRONIC FILING (ECF)**</u>
The Honorable John C. Coughenour
United States District Court Judge
United States District Court (WDWA)
700 Stewart Street
Seattle, WA 98101

Re: ***United States v. Richard Reid***
23 Cr. 188 (JCC)
Defense Sentencing Memorandum

Dear Judge Coughenour:

I represent the defendant, Richard Reid, in the above-referenced case. This letter is respectfully submitted pursuant to Rule 32 of the Federal Rules of Criminal Procedure and sets forth several matters that Mr. Reid will raise to aid in the determination of the appropriate sentence, serving the interests of justice and the sentencing goals of 18 U.S.C. § 3553(a). Mr. Reid respectfully joins in Probation's recommendation of the low end of the guidelines range—6 months. However, since Mr. Reid is in Zone B of the Sentencing Table, he additionally requests that the Court impose a sentence of Probation that includes a condition that substitutes the six-month minimum term of imprisonment with home confinement, as allowed for under the Guidelines. Finally, if the Court does not substitute imprisonment for home confinement, it is respectfully requested that the Court recommend BOP to place Mr. Reid at FCI Sheridan, which is the facility closest to his friends and family and the location where he was serving his sentence prior to being moved to FDC SeaTac while pending resolution of the instant case.

THE RITCHIE LAW FIRM, PLLC

## FACTUAL AND PROCEDURAL BACKGROUND

On May 12, 2023, Richard Reid was transported to BOP custody to begin service of his 24-month sentence under 19 Cr 228. Upon his arrival, Mr. Reid instantly began engaging in a diverse array of rehabilitative programming, and continues to this day to remain engaged in programming. After 7 months of dedicating himself to rehabilitation at FCI Sheridan, the Government secured an Indictment against Mr. Reid for the current charge, and he was transported to FDC SeaTac.

Only a few months after being charged, Mr. Reid accepted full responsibility for failing to surrender for service of his sentence under 19 Cr. 228 (JCC) and pled guilty to Count 1 of the Indictment, a violation of 18 USC 3146(a)(2). Given the nature of this offense, by law[1], any sentence imposed by this Court will be consecutive to that underlying sentence, which Mr. Reid is still serving.

Mr. Reid deeply regrets his terrible choice to not surrender on time for this sentence—a choice born out of panic and anxiety at the prospect of serving two years behind bars and away from his family.[2] Moreover, Mr. Reid further regrets the resources wasted on his eventual apprehension by law enforcement, and the impact his decision not to surrender has had on his children, wife, close friends and community members. Despite Mr. Reid's awful choice to not timely surrender, it is clear that the requested sentence of Probation with a condition to substitute the minimum term of imprisonment (6 months) with home confinement would be sufficient, but no greater than necessary, pursuant to 18 U.S.C. §3553(a).

Richard Warren Reid was born in Portland, Oregon, to parents David and Linda Reid.[3] Mr. Reid grew up in a financially secure home, although for years, his relationship with his father was strained. In fact, it is a relationship that has only recently begun to get on track. In his early years, Mr. Reid has memories of his father being unkind towards his mother, and using threats and intimidation as a way to rule the family home. Most consequently, Mr. Reid reports that his father was incapable of showing love towards him as a child, and was often absent from important life events.

---

[1] See 18 U.S.C. §3146(b)(2).

[2] This sentiment, as well as other helpful background information for the Court, is echoed in a letter from Dixon Andrews, which is attached hereto as Exhibit B.

[3] All factual information about Mr. Reid's background comes from: (1) the PSR; (2) follow up conversations with Mr. Reid about his time in custody and the programming he has participated in and; (3) several interviews with Mr. Reid's close friends and family, including several letters in support which are attached hereto as Exhibit C.

THE RITCHIE LAW FIRM, PLLC

Despite this strain, Mr. Reid's father was a hard worker who always provided for the family. Growing up, Mr. Reid did well academically and never got in trouble. During his youth, Mr. Reid was part of a close-knit social circle and remains best friends with much of this group to this day.

In 1988, Mr. Reid graduated from high school. He attended Clackamas Community College for two years before transferring to Western Oregon University, where he graduated in 1992 with a bachelor's degree. Since his college years, Mr. Reid has always been a hard worker. During summers in college, he worked at a golf course. Upon graduation from college, Mr. Reid secured a job with Nabisco, a globally known snack company.[4]

Richard Reid maintained this job until 1996, when tragedy struck. During work, Mr. Reid was in a serious car accident. He was rescued from the vehicle with use of the "jaws of life" and was taken to the hospital via flight for life. In addition to a substantial brain/head injury, Mr. Reid suffered a broken jaw, shoulder, hip and knee. In fact, his jaw had to be wired shut for some time because of this accident, and it took him nearly 2 full years to recover. Mr. Reid was never the same after this accident and he endured long-term emotional, physical and spiritual harm.

Upon his recovery, Mr. Reid began a long career in medical sales. He started at Everest and Jennings but quickly transferred to Bristol Meyers Squib later in 1998, where he did pharmaceutical sales. In 2002, Mr. Reid accepted a sales position with Purdue Frederick, where he remained until 2008. Between 2010 and 2012, Mr. Reid worked for Alere, another medical company. Beginning in 2012, Mr. Reid began working for Northwest Physicians Laboratory, which was the company at issue in Mr. Reid's 2019 federal criminal case.

During most of his professional career, Mr. Reid lived in Canby, Oregon. Most of the medical and pharmaceutical companies he worked for were large national companies, and he found himself traveling quite frequently for work. Near the end of his time with Purdue Frederick, Mr. Reid met his current wife, Melissa Reid. Melissa and Rick married in 2011 and have two children together, Sam and Becca. Mr. Reid is an incredibly proud and involved father. His children are academically, athletically and musically gifted, and before his incarceration, Mr. Reid was actively involved in their pursuits and never missed their games, concerts and church events.

In 2015, the health of each of Melissa Reid's parents began to fail, and the Reid family moved from Canby to Astoria to assist in their care. Eventually, Melissa's parents went into assisted living and passed away in 2020. This was an incredibly difficult time for Melissa, and Rick worked hard

---

[4] Notably, Mr. Reid had a very brief career in law enforcement before going into a career in medical sales. He briefly served with the Warrenton Police Department in 1994.



to support her and be the rock of the family. Melissa inherited part of her family's property along the Columbia River and the Reid family made that their new permanent home.

Since Mr. Reid's incarceration for his earlier offense, his marriage has been going through what he describes as turbulent times. Despite being at a crossroads in their marriage, Mr. Reid remains hopeful that he can salvage his marriage and move forward with his family intact. Mr. Reid is heartbroken with how his children have been handling his incarceration, each having struggled in their own way with their father being away.

As previously indicated, Mr. Reid has availed himself of numerous opportunities for growth and improvement while in BOP custody. Throughout his entire time at FCI Sheridan, he worked in "The Powerhouse" of the facility, working on boilers and air conditioning units for the prison. He was also issued an institutional driver license and allowed to drive facility vehicles across the grounds without supervision. This was based on merit and his lack of disciplinary history while incarcerated. While working in this capacity, Mr. Reid has been awarded merit increases and performance bonuses due to outstanding work performance. Once he was transferred to FDC SeaTac, he was selected to be a kitchen worker and logged 310 hours in his first two months of service.

Mr. Reid has also availed himself of numerous educational and therapeutic opportunities while at FCI Sheridan.  Although he does not suffer from substance abuse, he participated in NDAP (Non-Residential Drug Alcohol Treatment Program). This 12-week course not only focuses on substance abuse, but also addresses leaving behind a criminal lifestyle and working on managing difficult emotions, rational thinking, communication skills and community adjustments after a period of incarceration. Notably, Mr. Reid was also selected to serve as a class mentor for the NDAP program.

Mr. Reid also enrolled in and completed the Money Smart Program—a 12-week class on financial planning and how to navigate personal and household finances. This will serve Mr. Reid well after his release from incarceration since he will likely have to find a new career and start his financial life over. Recognizing his need to work on emotional intelligence, communication and better decision making, Mr. Reid also enrolled in and completed the 8-week Brain Health class. This is a course that focuses on self-improvement in a variety of areas, including judgment, decision making and overall mental and physical health.

In addition to the aforementioned programming, Mr. Reid also completed an 8-week basic guitar class, an 8-week leather crafting class and served as a math tutor and volunteer tutor for GED

# THE RITCHIE LAW FIRM, PLLC

students at the BOP facility. In this role, Mr. Reid used his advanced education and experience to help other inmates study for and pass their GED testing.

Even after his transfer to FDC SeaTac, Mr. Reid continued taking opportunities towards volunteer work and rehabilitation. At SeaTac, Mr. Reid enrolled in Psychology Pathways, a therapeutic mental health course that focuses on mindfulness, anger management, forgiveness, anxiety, criminal thinking, dialectical thinking, emotional regulation and healing trauma, among other topics. While enrolled, it was recommended that Mr. Reid obtain a mentor within the BOP. Correctional Officer and BOP Chaplain Cho has been serving as Mr. Reid's mentor in the psychology pathways program. Mr. Reid has connected with C/O Cho and has appreciated his mentorship and will use those skills to live a better life once released from custody.

Mr. Reid is also involved in the FDC SeaTac NA/AA meetings, and even serves as the group's secretary. Mr. Reid has spent countless hours while at the FDC tutoring non-native English speakers and helping them achieve higher English proficiency. Finally, he has spent numerous hours working towards his Commercial Driver License and is prepared to take the exam upon his release so he has an immediate work skill with which he can use to begin contributing to his family's finances and begin to pay off restitution from his earlier case.

## THE SENTENCING GUIDELINES & THE PRESENTENCE REPORT:

**Richard Reid** is in agreement with the Government and Probation that the following Sentencing Guidelines provisions apply to this case:

- The base level offense is 11 pursuant to USSG §§ 2J1.6(a)(1).

- A two-level decrease should be applied given Mr. Reid's clear acceptance of responsibility, pursuant to USSG §3E1.1(a).[5]

- The total adjusted offense level is 9.

- Mr. Reid has three criminal history points based on his one prior case under 19 Cr. 228 (JCC) and is thus in criminal history category 2.

- Since Mr. Reid has fewer than 7 criminal history points, no additional points are added for committing a new offense while under sentence, pursuant to USSG 4A1.1(e).

---

[5] Mr. Reid's Letter of Acceptance of Responsibility to the Court is attached hereto as Exhibit A.



- The guideline range is 6-12 months.

- Mr. Reid is in Zone B of the Sentencing Table, and thus the Court may impose a sentence of: (1) imprisonment (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in USSG §5C1.1(e), so long as at least one month is served in custody or (3) a sentence of probation that includes a condition or combination of conditions that substitute imprisonment for intermittent confinement, community confinement or home detention.

## OBJECTIONS TO THE FINAL PRESENTENCE INVESTIGATION REPORT

On July 3, 2024, counsel provided Probation and the Government a letter outlining clarifications, objections and additions to the initial disclosure of the presentence report. Probation has incorporated or otherwise addressed all pending matters and there are no issues to raise before the Court at sentencing with respect to the final version of the PSR.

## THE APPROPRIATE SENTENCE

It is respectfully requested that the Court impose a sentence of Probation with a condition of home confinement to substitute for the 6 month minimum term of imprisonment. This constitutes a sentence within the applicable Guidelines range. Of course, the applicable Guidelines range is one of many factors the Court must consider when determining what constitutes an appropriate sentence. Section 3553(a) directs a sentencing Court to impose a reasonable sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of the sentencing factors outlined in the subsection. In *Gall v. United States*, 128 S.Ct. 586, 597 (2007), the United States Supreme Court held that while the Guidelines should be the "the starting point and the initial benchmark" of a reasonable sentence, the sentencing judge "may not presume that the Guideline range is reasonable" and "must make an individualized assessment based on the facts presented." The Court also "reject[ed] an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." Thus, a sentencing Court, after considering the advisory Guidelines, is now free to fashion a reasonable sentence that it deems appropriate based upon all of the sentencing factors set forth in Title 18 U.S.C. § 3553(a). Accordingly, in this case, the Court would also be free to impose a sentence below the applicable guidelines upon consideration of the pertinent factors under §3553(a). For the following reasons, it is respectfully submitted that a sentence of Probation with a condition of home confinement to substitute 6 months imprisonment would constitute an appropriate sentence.



THE RITCHIE LAW FIRM. PLLC

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553 (a)(1)).**

   **a. The nature and circumstances of the offense;**

Failing to surrender to serve a sentence is unquestionably unacceptable conduct. In the weeks leading up to his surrender, Mr. Reid was facing some health challenges on top of the normal anxiety one experiences when preparing to leave their family and go to prison. His fear and panic got the better of him and he made a terrible decision to not check in to FCI Sheridan when ordered. This is a mistake he deeply regrets and wishes he could take back. When viewed in its place on the spectrum of federal crimes, however, failing to surrender is at the lower end of the offense levels. It is exactly because of this low offense level that Probation with a condition of home confinement is available under the Guidelines.

   **b. The history and characteristics of the defendant;**

Richard Warren Reid was raised in a middle-class family and had a generally positive upbringing. Despite this general positivity, one aspect of his childhood impacted him deeply into adulthood: his father did not express love, did not show up to important events in Rick's childhood and ruled the family home with threats and intimidation. Rick was starved of a father's approval most of his life and this has impacted his relationships and communication style into adulthood. As Rick has taken advantage of mental health programming in BOP, he has processed this trauma and greatly improved his relationship with his father. Mr. Reid's friends and family are also impressed with the self-improvement he has achieved while incarcerated, which is reflected in their letters to the Court.

Rick has been a hard worker his entire life. He pursued higher education, maintained employment while in college and has had steady work history throughout his adulthood, including while he has been incarcerated. By all accounts, he is a dedicated, loving and supportive husband, and is an amazing father. Mr. Reid's biggest regret in failing to surrender is the impact it will have on his children. Mr. Reid's children have both struggled with their father's absence, and Mr. Reid regrets that because of his panicked and short-sighted choice to not surrender on time, his absence may be prolonged and his children will continue to suffer. He will never again make a choice that will put his children and wife in this position again.



Aside from the underlying conviction for healthcare kickbacks, Mr. Reid has otherwise led a law-abiding life. While he has been incarcerated, he has taken every opportunity presented to him to better himself. He has done this through educational programs, vocational trainings, volunteer work, employment, and mental health programming. He has demonstrated that the time he has already spent in custody has served its rehabilitative and punitive purpose, and this Court can be assured that Mr. Reid will never make a choice that could land him in this position ever again. Mr. Reid's acknowledgment of the harm he has caused through his actions, his insight into what led him there and the steps he has taken to move past it are all reflected in his letter to the Court. *See* Exhibit A.

When viewing the nature of the offense in tandem with Mr. Reid's unique background and history, including his remarkably good use of time in custody to rehabilitate himself to date, it is clear that the requested sentence of Probation with a condition that substitutes the 6 month minimum term of imprisonment with home confinement is an appropriate sentence.

**(2) The need for the sentence imposed to:**

    **a. To reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense and to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant (18 U.S.C. § 3553 (a)(2)(A-C))**

Additional imprisonment is not necessary to deter criminal conduct or protect the public from Mr. Reid. For decades before involvement in the offense for which he is already under sentence, Mr. Reid was a law abiding and hard-working citizen. He always lent a helping hand to neighbors, was active in his community and is an outstanding father and husband. This is the person he will be when released from custody, and his time already spent in custody was sufficient deterrence against future crimes.

Moreover, it cannot go unnoticed that the Government obtained the Indictment against Mr. Reid when he was already 7 months into service of his earlier sentence. In those 7 months, Mr. Reid had already made great strides towards rehabilitation by taking advantage of nearly every opportunity presented to him while at his BOP facility. He has made even more progress in the months since his Indictment on the new case. He volunteers to assist other inmates to learn English and study for their GED exams. He has had consistent employment in the heating/cooling unit of the prison and in the kitchen at the FDC. The time he has already served in custody has served its purpose, he has learned every lesson a period of incarceration can teach, and no additional prison time is needed to deter his future crimes or protect the public from him.



Accordingly, a sentence of Probation with a condition that any imprisonment be served as home confinement sufficiently reflects the seriousness of the offense, promotes respect for the law, affords adequate deterrence to criminal conduct and protects the public from further crimes of the defendant. Notably, since the request here is for home confinement while on probation, if Mr. Reid were not to follow any future court orders, he would still be subject to a term of imprisonment for any violations. Thus, the Court is not losing its ability to incarcerate Mr. Reid should he demonstrate he is not prepared to comply with future orders of the Court once released.

> **b. To provide the defendant with needed education or vocational training, medical care, or other correction treatment in the most effective matter (18 U.S.C. § 3553(a)(2)(D))**

As previously discussed, since Mr. Reid was first incarcerated, he has taken advantage of a plethora of educational opportunities and vocational trainings within BOP. Any further educational and vocational trainings would be out of custody, and so consideration of this factor supports the requested sentence which does not result in additional prison time. Additionally, Mr. Reid has continued to incur medical problems while at the FDC. Counsel's understanding is that the FDC medical unit has ordered an endoscopy outside of the FDC for Mr. Reid to address some potential internal bleeding and other digestive issues. A sentence of Probation with home confinement that allows Mr. Reid to address his medical ailments with his long-standing doctors in the community, at his own expense, is also supported by consideration of this sentencing factor.

> **(3) The Kinds Of Sentences Available and the Applicable Guidelines Range (18 U.S.C. § 3553(a)(3-4))**

The applicable Guidelines range in this case is 6-12 months imprisonment. However, since Mr. Reid has a low offense level and criminal history score, he is in Zone B of the Sentencing Table and the Guidelines allow for alternatives to incarceration for his sentence. Specifically, the applicable Guidelines here allow for a sentence of Probation that includes a condition that substitutes imprisonment for home detention.[6]  Pursuant to USSG §5C1.1(e), each day of home confinement substitutes for one day of imprisonment. Accordingly, it is contemplated by the

---

[6] See United States Sentencing Guidelines Manual (2023), §5C1.1, application note 3(B): "…where the applicable guideline range is in Zone B…the Court has three options…(B) it may impose a sentence of probation provided that it includes a condition of probation requiring a period of…home detention sufficient to satisfy the minimum period of imprisonment specified in the guideline range. For example, where the guideline range is 4-10 months, a sentence of probation with a condition requiring at least 4 months of…home detention would satisfy the minimum term of imprisonment specified in the guideline range." Available at https://guidelines.ussc.gov/apex/r/ussc_apex/guidelinesapp/guidelines?app_gl_id=%C2%A75C1.1



THE RITCHIE LAW FIRM. PLLC

applicable Guidelines in this case for the Court to grant the defense's requested sentence, and sentence Mr. Reid to the low end of the range, but allow him to serve that time on home confinement and receive day for day credit.

**(4) Any Pertinent Policy Statement (18 U.S.C. §3553(a)(5))**

Counsel is not aware of any pertinent policy statements that would cut against the requested sentence of 6 months' probation with a condition of home confinement.

**(5) The Need To Avoid Unwarranted Sentencing Disparities (18 U.S.C. § 3553(a)(6))**

Although the JSIN data provided is based on a remarkably small sample size (4 defendants) such that it is minimally useful, one thing that stands out is that the average sentence of all 4 defendants who had the same offender score and adjusted offense level as Mr. Reid was 6 months. The JSIN data also suggests that at least some of these defendants received alternatives to imprisonment as part of their sentences.[7] Accordingly, the requested sentence of 6 months, to be served on home confinement as a condition of Probation, is aligned with other sentences received by similarly situated defendants and does not result in an unwarranted sentencing disparity.

**(6) The Need to Provide Restitution to any Victims of the Offense (18 U.S.C. § 3553(a)(7))**

As the Court is aware, Mr. Reid has already been ordered to pay millions of dollars in restitution in connection with his earlier case. While he remains in custody, he is unable to earn sufficient money to begin contributing towards that debt. As previously established, Mr. Reid has made good use of his time in prison, and has taken advantage of myriad of rehabilitation programming. To impose additional prison time would be counterproductive to this sentencing factor, as rehabilitation has been achieved and Mr. Reid cannot work towards paying his restitution until he is out of custody. Accordingly, consideration of this sentencing factor supports the defense's requested sentence of Probation with a condition that substitutes imprisonment with home confinement.

---

[7] *See Addendum to the Presentence Report, JSIN Data:* "For the 4 defendants who received a sentence of imprisonment in whole *or in part*, the average length of imprisonment imposed was 6 months…"



## <u>CONCLUSION</u>

Richard Reid made a terrible decision to not surrender for service of his sentence. When he made this choice, he was overcome with panic and fear at the prospect of leaving his wife and children to serve a lengthy prison term. The impact this choice has had on his family is something he has regretted every day of his incarceration. Mr. Reid has spent every day in custody working hard towards rehabilitation. He has taken advantage of every opportunity placed in front of him, in areas like vocational training, mental health programming, volunteer work and employment. Frankly, Mr. Reid had achieved remarkable rehabilitation before he was even Indicted for this case, which occurred 7 months into service of his sentence. Despite that blow, Mr. Reid has continued to work towards self-improvement as he nears the end of his first sentence. Mr. Reid has demonstrated that he is no longer a risk to the community and application of the sentencing factors in this case support a conclusion that further incarceration is not necessary. Accordingly, the requested sentence of Probation, with a condition that the minimum 6-month term under the Guidelines be served on home confinement, is sufficient but no greater than necessary to achieve the goals of sentencing. It is a sentence contemplated by the Guidelines and is appropriate for the Court to impose under the unique facts and circumstances of this case.

The Court's time and attention to this important matter is greatly appreciated.

Respectfully submitted,

Stephen H. Ritchie

cc:    AUSA Michael Dion
          *via electronic mail*
       USPO Ryan Adamson
          *via electronic mail*